# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

JAMAIEN MONROE,　　　　　　)
aka Carl Dean,　　　　　　　　)
　　　　　　　　　　　　　　　)
　　　　　Petitioner,　　　　　)
　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　)　　Civil Action No. 15-441-GMS
　　　　　　　　　　　　　　　)
DANA METZGER, Warden, and　　)
ATTORNEY GENERAL OF　　　　)
THE STATE OF DELAWARE,　　　)
　　　　　　　　　　　　　　　)
　　　　　Respondents.[1]　　　)

---

Jamaien Monroe. *Pro se* petitioner.

Sean P. Lugg, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

---

## MEMORANDUM OPINION

_____May 8_____, 2018
Wilmington, Delaware

---

[1]Warden Dana Metzger replaced former warden David Phelps, an original party this case. *See* Fed. R. Civ. P. 25(d).

Sleet, District Judge

Pending before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner Jamaien Monroe ("Monroe"). (D.I. 1) The State filed an answer in opposition. (D.I. 15) For the reasons discussed, the court will deny the petition.

## I. BACKGROUND

This case arises from two separate incidents. The first set of charges against Monroe were attempted first degree murder and other charges resulting from an incident occurring on January 26, 2006. (D.I. 17 at 11) The second set of charges arose out of an incident which occurred on April 2, 2207, and included first degree murder and other related charges. In both cases, the shooting victim was Andre "Gus" Ferrell. The cases were later consolidated into one case, which is the case leading to this proceeding. As a result of the consolidation, counts 12-14 of the indictment related to the January 26, 2006 attempted murder of Ferrell and counts 1-11 related to the April 2, 2007 murder of Ferrell. *See State v. Monroe*, 2010 WL 1960123 (Del. Super. Ct. May 14, 2010). In March 2009, a Delaware Superior Court jury convicted Monroe of first degree murder and the related charges, but found him not guilty of the counts related to the attempted murder charges. (D.I. 15 at 1) Monroe was sentenced to life imprisonment plus twelve years. *Id.* The Delaware Supreme Court affirmed his convictions on September 14, 2011. *See Monroe v. State*, 28 A.3d 418 (Del. 2011) (*en banc*).

In September 2012, Monroe filed in the Delaware Superior Court a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 17-1 at 160, Entry No. 212) The Superior Court denied the motion, and the Delaware Supreme Court affirmed that decision. *See State v. Monroe*, 2014 WL 2581971 (Del. Super. Ct. June 6, 2014); *see Monroe v. State*, 2015 WL 1407856 (Del. Mar. 25, 2015).

## II.    GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i)  there is an absence of available State corrective process; or
>    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell*, 543 U.S. at 451 n.3; *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines*, 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some

objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States,* 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell,* 547 U.S. 518, 537-38 (2005); *see Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

## C. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits,[2] the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly

---

[2] A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn,* 570 F.3d 105, 115 (3d Cir. 2009).

established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies even when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied. *See Harrington v. Richter*, 562 U.S. 86, 98-101 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

Finally, a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III.    DISCUSSION

Monroe's timely filed habeas petition alleges eight grounds for relief: (1) appellate counsel was ineffective in selecting the claims presented on appeal; (2) post-conviction counsel was ineffective in selecting the claims presented in the Rule 61 proceeding; (3) defense counsel was ineffective in handling the admission of the evidence from the uncharged attempted robbery and in permitting the joinder of the attempted murder and murder charges; (4) defense counsel was ineffective in addressing the jury's discovery of a receipt in the pocket of the jacket police

5

obtained from the apartment of Monroe's girlfriend; (5) defense counsel was ineffective in the investigation of eyewitnesses and in seeking the suppression of their out-of-court identifications; (6) the trial court erred by admitting evidence of the uncharged robbery and in permitting the joinder of the attempted murder and murder charges; (7) the trial court erred in allowing Kason Wright's abbreviated in-court testimony and out-of-court statement because it was the result of prosecutorial misconduct and violated the Confrontation Clause; and (8) the seizure of the jacket violated the Fourth Amendment. The State filed an answer to the petition, arguing that the claims should be dismissed as procedurally barred, meritless, or non-cognizable. (D.I. 15) Thereafter, Monroe filed a reply to the State's answer (D.I 29), essentially amplifying his original claims.

### A. Claims One and Five: Procedurally Barred

In claim one, Monroe alleges that appellate counsel was ineffective for failing to present meritorious issues on direct appeal. Claim five asserts that defense counsel provided ineffective assistance in investigating witnesses Brown and Meier and their identifications, and in failing to file a motion to suppress Brown's and Meier's pretrial identifications. Monroe did not raise these arguments in his Rule 61 motion or to the Delaware Supreme Court on post-conviction appeal. At this juncture, any attempt to raise the arguments in a new Rule 61 motion would be denied as time-barred under Rule 61(i)(1) and denied under Rule 61(i)(2) as repetitive. *See Johnson v. Phelps*, 810 F. Supp. 2d 712, 719 (D. Del. 2011). Therefore, as the State asserts, claims one and five are procedurally defaulted, which means that the court cannot review their merits unless Monroe demonstrates cause and prejudice, or that a miscarriage of justice will result from the absence of review.

6

Monroe does not assert any cause for his default of these two claims. To the extent he contends that Rule 61(i)(2) would not have applied to his Rule 61 motion at the time of his Rule 61 proceeding, Monroe does not appear to understand that the relevance of Rule 61(i)(2) is how it would apply to bar a new Rule 61 motion at this point in time and preclude the exhaustion of state remedies. Monroe's focus on the applicability of Rule 61(i)(2) does not explain why he failed to present these claims in his Rule 61 motion in the first place and, therefore, does not demonstrate cause for his default.

In the absence of cause, the court will not address the issue of prejudice. Additionally, the miscarriage of justice exception to the procedural default doctrine cannot excuse Monroe's default, because Monroe has not provided new reliable evidence of his actual innocence. Accordingly, the court will deny claims one and five as procedurally barred.

### B. Claim Two: Not Cognizable

In claim two, Monroe contends that post-conviction counsel provided ineffective assistance in selecting the claims presented in his Rule 61 proceeding. It is well-settled that there is no Sixth Amendment right to counsel on collateral review. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991); *Pennsylvania v. Finley*, 481 U.S. 551, 555-56 (1987). In addition, § 2254(i) states that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). Therefore, the court will deny claim two because it does not assert an issue cognizable on federal habeas review.

7

## C. Claim Three: Meritless

In claim three, Monroe contends that defense counsel provided ineffective assistance by failing to renew motions to exclude evidence of the uncharged attempted robbery and for failing to renew the motion to sever the attempted murder and murder charges. In Monroe's Rule 61 proceeding, both the Superior Court and the Delaware Supreme Court denied the claim as defaulted under Delaware Superior Court Criminal Rule 61(i)(4) for being formerly adjudicated and, alternatively, as meritless. Although a formerly adjudicated claim barred by Rule 61(i)(4) is defaulted for Delaware state court purposes, for the purposes of federal habeas review, the fact that the claim was formerly adjudicated means that it was decided on the merits and should be reviewed under the deferential AEDPA standard contained in § 2244(d)(1). *See Trice v. Pierce*, 2016 WL 2771123, at*4 n.4 (D. Del. May 13, 2016). Given these circumstances, claim three will only warrant relief if the Delaware Supreme Court's rejection of the claim was either contrary to, or an unreasonable application of, clearly established federal law.

The clearly established law governing the instant ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A

8

reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 694.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, the court notes that the Delaware Supreme Court cited and applied the *Strickland* standard in affirming the Superior Court's decision. Therefore, the Delaware Supreme Court's decision with respect to all of Monroe's adjudicated ineffective assistance of counsel claims was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rale from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The court's inquiry under § 2254(d)(1) is not over, because it must also determine if the Delaware Supreme Court's denial of claim three as meritless involved a reasonable application of the *Strickland* standard. When performing this inquiry, the court must review the Delaware Supreme Court's decision with respect to petitioner's ineffective assistance of counsel claims through a "doubly deferential" lens. *See Harrington*, 562 U.S. at 105. In other words, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

As he did in his Rule 61 proceeding, Monroe now contends that Kason Wright's refusal to testify should have precluded the admission of the uncharged attempted robbery evidence and should have spurred repeated efforts by trial counsel to achieve its exclusion as well as severance of the attempted murder and murder charges. In affirming the Superior Court's denial of the instant ineffective assistance of counsel claim, the Delaware Supreme Court made the following findings:

> Monroe filed a motion *in limine* to exclude the evidence of the attempted robbery and testimony of three eyewitnesses: Jonathan, Ronald and Kason. In a videotaped out-of-court statement, Kason had identified Monroe as the being involved in the attempted robbery of Ferrell. This statement was introduced into evidence at the *in limine* hearing, pursuant to 11 *Del. C.* § 3507. Jonathan and Ronald, however, did not directly identify Monroe as being involved in the robbery during their pre-trial testimony. Based upon the combined testimony of Jonathan, Ronald and Kason, the trial court determined that the evidence pertaining to the uncharged attempted robbery was supported by "plain, clear and conclusive evidence." Accordingly, the trial court denied the motion *in limine,* and ruled that the attempted robbery would be admissible as evidence of motive during Monroe's trial for the attempted murder and actual murder of Ferrell.

> At trial, Jonathan and Ronald testified consistently with their pretrial testimony at the hearing on Monroe's motion *in limine.* But when Kason began to testify at trial, he suddenly ceased testifying on the stand and invoked his Fifth Amendment rights. Since Kason did not testify to the substance of the issues, his videotaped statement to the police was inadmissible at trial.

> Following Monroe's conviction for Ferrell's murder, Monroe moved for a new trial, asserting that the jury did not hear "plain, clear and conclusive" evidence of his prior uncharged attempted robbery, and therefore, no evidence of that crime should have been admitted at trial. The trial court denied the motion for a new trial, ruling that even without the testimony of Kason, the testimony of Jonathan and Ronald was "plain, clear and conclusive" evidence of Monroe's motive for the attempted murder and the actual murder of Ferrell. On direct appeal to [the Delaware Supreme Court] and after ... *de novo* review, [the Delaware Supreme Court] held that even without the testimony of Kason, the eyewitness testimony of Jonathan and Ronald constituted plain, clear and conclusive circumstantial evidence of Monroe's attempt to rob Ferrell, and that, therefore, the evidence of the attempted robbery was properly admitted at trial.

*Monroe*, 2015 WL 1407856, at \*3-4. The Delaware Supreme Court then held that Monroe's

argument failed to satisfy *Strickland*, because

> Monroe's counsel employed a trial strategy regarding the robbery evidence that, albeit unsuccessful, was within the zone of reasonableness. Additionally, Monroe cannot show that there is a reasonable probability that the proceeding would have turned out differently if his counsel had renewed the motions regarding the uncharged robbery. Because this Court has found that the evidence was properly admitted, Monroe cannot establish prejudice based upon his counsel's failure to raise and renew these motions. Accordingly, we reject . . . Monroe's claim.

*Monroe*, 2015 WL 1407856, at \*4.

After reviewing the record, the court concludes that the Delaware Supreme Court's

decision was based on a reasonable application of *Strickland*. Defense counsel filed a pre-trial

motion *in limine* to exclude the uncharged attempted robbery evidence. The Superior Court

denied the motion to exclude after finding that Monroe's involvement in the attempted robbery

was "plain, clear, and conclusive," and "the jury could possibly find that the evidence tended to

establish a motive for [Monroe] to murder Ferrell." *Monroe*, 2010 WL 1960123, at \*1. After his

conviction, Monroe filed a motion for new trial contending that the jury did not hear "plain, clear

and conclusive" evidence of the uncharged attempted robbery since only Wisher and Ronald

Wright testified. *See Monroe*, 2010 WL 1960123, at \*1. The Superior Court denied the motion

for new trial after holding that Wisher's and Ronald Wright's testimony constituted "plain, clear,

and conclusive evidence that could tend to show that [Monroe] was involved in the [uncharged

attempted] necklace robbery the day before the alleged attempted murder, and, thereby, had a

motive to murder, or to attempt to murder, Andre Ferrell." *Id.* On direct appeal, the Delaware

Supreme Court held that the prior uncharged attempted robbery evidence was properly admitted

because "Wisher and Ronald Wright's eyewitness" alone was sufficient to support admission of

the uncharged attempted robbery evidence. Based on the foregoing, Monroe cannot demonstrate that he was prejudiced by defense counsel's failure to continue to challenge the admission of the attempted robbery evidence since the Delaware Supreme Court found on direct appeal that the attempted robbery evidence was properly admitted even without Kason Wright's testimony.

Movant's contention that defense counsel provided ineffective assistance by failing to succeed in getting the attempted murder and murder charges severed is similarly unavailing. A consolidated indictment charged Monroe with the attempted murder of Ferrell on January 27, 2006 and first degree murder for killing Ferrell on April 2, 2007. Defense counsel filed a pre-trial motion to sever the charges. The Superior Court denied the motion, but recognized that a "separate charge" instruction should be given to the jury. *See Monroe*, 28 A.3d at 428. During the trial, the Superior Court instructed the jury as follows:

> [Monroe] is charged in Counts 1 through 10 with criminal charges relating to the incident on April 2, 2007 and, in Counts 11 and 12, with criminal charges related to the incident on January 26, 2006. These are separate and distinct offenses and must, therefore, be independently evaluated by you. Just because you reach a conclusion with regard to the other offenses does not mean you need to reach a similar conclusion as to any of the other charges. Again, each charge is separate and distinct, and you must evaluate evidence as to one independently from evidence as to the others.

*Monroe*, 28 A.3d at 428. On direct appeal, the Delaware Supreme Court explained that, pursuant to well-settled Delaware law, a jury instruction like the one in Monroe's case effectively mitigates any potential prejudice when a defendant is tried for two separate attacks against a single victim. *Id.* The Delaware Supreme Court determined that the record supported the presumption that a jury follows instructions because the jury acquitted Monroe of attempted murder and related charges. The Delaware Supreme Court then held that the Superior Court did not abuse its discretion in denying the motion to sever. *Id.*

12

It is well-established that "[s]tate courts are the ultimate expositors of state law,"[3] and claims based on errors of state law are not cognizable on habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Given the Delaware Supreme Court's holding that the severance motion was properly denied under Delaware law, defense counsel's "failure" to "renew" a meritless severance motion does not amount to constitutionally ineffective assistance of counsel. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999). Therefore, the Court concludes that the Delaware Supreme Court did not unreasonably apply *Strickland* in denying Monroe's instant assertion regarding defense counsel's failure to renew the motion to sever.

Accordingly, the court will deny claim three in its entirety for failing to satisfy § 2254(d).

### D. Claim Four: Meritless

Next, Monroe asserts that defense counsel provided ineffective assistance by failing to request a mistrial after previously undiscovered store receipts were found in the pocket of a jacket seized from the apartment of Monroe's girlfriend by the jury during deliberations. As explained by the Superior Court in Monroe's Rule 61 proceeding:

> One of the receipts had the name "Jamar Dawson" on it. The receipt was for automobile repairs performed at a local Pep Boys shop. [Monroe] contends that this receipt was "an explosive piece of evidence that Monroe could have used to his advantage." Monroe could have argued that the receipt had someone else's name on it and therefore the receipt and the black jacket belonged to someone else. [Monroe] contends that having this piece of evidence that was previously unknown and unaccounted for, discovered by the jury was a substantial detriment to [him]. Monroe acknowledges, however, that the receipt could also have been extremely harmful to [him].
>
> On April 2, 2007, the evening of the murder of Ferrell, videotape from the Derrs store depicted a man who looked like [] Monroe, wearing a black and red jacket in the market, in the immediate area prior to Ferrell's arrival. During a search of

---

[3]*See Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).

Saunders' apartment ([] Monroe's girlfriend's apartment), located in the Lexington Green Apartments in the Edison Building, the police found a jacket fitting the description of the one seen in the videotape. The receipt at issue was found by the jury inside this jacket pocket.

In their joint Affidavit, defense counsel represented that the receipt was not subject to cross examination and no foundation was laid for its admission. Certainly the fact that the jury found the receipt was problematic for the defense. On the other hand, the jury had been deliberating for quite a while, and defense counsel believed that the jury was receptive to the defense case. Defense counsel knew that if they sought a mistrial and it was granted, the State would shore up its case at the retrial. The jury on the retrial could have been more or less receptive to the defense case than the current jury. Defense counsel made the strategic decision not to move for a mistrial and to settle for a curative instruction instead.

*State v. Monroe*, 2014 WL 934446, at *8–9 (Del. Super. Ct. Mar. 6, 2014), Comm'r Report

*adopted by*, 2014 WL 2581971 (Del. Super. Ct. June 6, 2014), *aff'd*, 2015 WL 1407856 (Del.

Mar. 25, 2015).

In his Rule 61 motion, Monroe argued that defense counsel provided ineffective

assistance by failing to file a motion for mistrial once the receipt was discovered during jury

deliberations. After noting the dangers of second-guessing an attorney's choice in hindsight, and

after acknowledging defense counsel's "experience, expertise, impressions and observations,"

the Superior Court concluded that Monroe had not overcome the heavy presumption that defense

counsel's decision to request a curative instruction rather than a mistrial constituted sound trial

strategy. *See Monroe*, 2014 WL 934446, at *9; *Monroe*, 2014 WL 2581971, at *7. The Superior

Court also concluded that Monroe failed to demonstrate any prejudice resulting from defense

counsel's actions, because the "evidence could have been viewed in various different ways: both

favorable and detrimental." *See Monroe*, 2014 WL 934446, at *10; *Monroe*, 2014 WL 2581971,

at *7. The Delaware Supreme Court affirmed the Superior Court's decision on post-conviction

appeal for basically the same reasons. However, the Delaware Supreme Court further reasoned

that Monroe did not establish prejudice because there was no indication that Monroe provided defense counsel "with any rational basis to argue that the jacket in evidence was not his or had been worn by someone else." *Monroe*, 2015 WL 1407856, at *5.

The Delaware Supreme Court's rejection of claim four was based on a reasonable application of *Strickland*. In this proceeding, Monroe merely asserts that the receipt was incriminating because it supported that he (identified by his alias) was in possession of his girlfriend's car on the day of the murder, and that car was also identified as being at the crime scene. Defense counsel admitted that the receipt was problematic, but the soundness of counsel's decision to proceed with jury deliberations is supported by the fact that the jury acquitted Monroe of all charges related to the attempted murder charge. Additionally, Monroe's assertion that the receipt could be interpreted in an incriminating manner fails to demonstrate a reasonable probability that the result would have been different at a second trial if the motion for mistrial had been granted. In short, Monroe has failed to demonstrate the requisite prejudice under *Strickland*. Accordingly, the court will deny claim four for failing to satisfy § 2254(d).

### E. Claim Six: Not Cognizable

In claim six, Monroe contends the trial court erred by admitting evidence of the uncharged attempted robbery and in permitting the joinder of the attempted murder and murder charges. Monroe presented this same argument to the Delaware Supreme Court on direct appeal, arguing that the joinder violated Superior Court Criminal Rule 8(a). The Delaware Supreme Court rejected Monroe's argument, and held that the trial court did not err in denying his motion to sever the charges. Monroe also argued on direct appeal that the Superior Court should have granted him a new trial because the admission of the uncharged robbery after Kason Wright

15

refused to identify Monroe as the robber diluted the evidence such that it fell short of the "plain, clear, and conclusive" requirement under *Getz v. State*, 538 A.2d 726, 734 (Del. 1988) and Delaware Rule of Evidence 404(b). The Delaware Supreme Court rejected the argument and held that, pursuant to Delaware caselaw, the eyewitness testimony of Wisher and Ronald Wright constituted sufficient circumstantial evidence of the uncharged robbery and was properly admitted at trial.

"Improper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986). Additionally, the court reiterates that "[s]tate courts are the ultimate expositors of state law,[4] and claims based on errors of state law are not cognizable on habeas review. *See Estelle*, 502 U.S. at 67-68. Here, as in his direct appeal, Monroe does not assert that the alleged improper joinder of charges or admission of the uncharged attempted robbery evidence amounted to a constitutional violation. Rather, he argues that the trial court misapplied state evidentiary rules and abused its discretion. Thus, the court will deny claim six because it does not assert a claim cognizable on habeas review.

### F. Claim Seven: Procedurally Barred

In claim seven, Monroe contends that the trial court erred by admitting Kason Wright's abbreviated in-court testimony, Kason's out-of-court statement, and/or Detective Andrew Brock's interpretative narrative of Kason's out-of-court statement, because these admissions violated his rights under the Confrontation Clause and was the result of prosecutorial misconduct. Monroe asserts that the Superior Court should have forced Kason to testify.

---

[4]*See Mullaney*, 421 U.S. at 691.

To begin, Monroe's assertions are factually baseless. Detective Brock did not testify at trial, and Kason's out-of-court statement to Detective Brock was not played for the jury and was deemed inadmissible.

In turn, a review of the record reveals that Monroe did not present his Confrontation Clause or prosecutorial misconduct allegations to the Delaware Supreme Court on direct appeal. Although one of Monroe's ineffective assistance of counsel claims alleged that defense counsel was ineffective for failing to request a mistrial after Kason Wright ceased to testify, that claim did not serve to exhaust state remedies for his present substantive prosecutorial misconduct and Confrontation Clause allegations. *See Fogg v. Phelps*, 414 F. App'x 420, 429 (3d Cir. 2011)(holding that district court properly concluded petitioner had failed to exhaust his substantive Fourteenth Amendment claim in the state court system because he presented it in the context of an ineffective assistance of counsel claim). At this juncture, any attempt to raise the instant arguments in a new Rule 61 motion would be denied as time-barred under Rule 61(i)(1), denied for being a subsequent motion under Rule 61(i)(2), and denied as procedurally defaulted under Rule 61(i)(3) for failing to be presented on direct appeal. Therefore, claim seven is procedurally defaulted, which means that the court cannot review its merits unless Monroe demonstrates cause and prejudice, or that a miscarriage of justice will result from the absence of review.

Monroe does not assert any cause for his default of claim seven. In the absence of cause, the court will not address the issue of prejudice. Additionally, the miscarriage of justice exception to the procedural default doctrine cannot excuse Monroe's default, because he has not

provided new reliable evidence of his actual innocence. Accordingly, the court will deny seven as procedurally barred.

### G. Claim Eight: Not Cognizable

On April 2, 2007, Ferrell was shot and killed as he was leaving a store called Derrs' Market. Videotape from Derrs' Market showed a man who looked like Monroe in the store before Ferrell arrived. During a search of Monroe's girlfriend's apartment, the police found a jacket resembling the one seen in the videotape.

In claim eight, Monroe asserts that the seizure of the jacket violated his rights under the Fourth Amendment because it exceeded the scope of the warrant and was not properly within the plain view exception. Monroe also contends that the court misapplied Delaware evidence rules and improperly admitted the jacket as evidence during the trial. This claim is unavailing.

First, the State properly argues that the court is barred from considering the merits of this Fourth Amendment argument under the doctrine established in *Stone v. Powell*, 428 U.S. 465, 494 (1976). In *Stone*, the Supreme Court held that federal courts cannot provide habeas review of Fourth Amendment claims if the petitioner had a full and fair opportunity to litigate Fourth Amendment claims in the state courts. *Id.*; *see Wright v. West*, 505 U.S. 277, 293 (1992) ("We have also held . . . that claims under *Mapp* [alleging evidence obtained in violation of the Fourth Amendment] are not cognizable on habeas as long as the courts have provided a full and fair opportunity to litigate them at trial or on direct review."). A petitioner has had a full and fair opportunity to litigate such claims if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure, irrespective of whether the petitioner actually availed himself of that mechanism. *See Boyd v. Mintz*, 631 F.2d 247, 250 (3d Cir.

18

1980); *U.S. ex rel. Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir. 1978); *Petillo v. New Jersey*, 562 F.2d 903, 906-07 (3d Cir. 1977). Conversely, a petitioner has not had a full and fair opportunity to litigate a Fourth Amendment claim, and therefore, avoids the *Stone* bar, if the state system contains a structural defect that prevented the state from fully and fairly hearing his Fourth Amendment claims. *See Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002).

Here, the record reveals that Monroe had a full and fair opportunity to litigate his Fourth Amendment claim because actually filed several pre-trial motions. *See State v. Monroe*, 2008 WL 3413335 (Del. Super. Ct. July 14, 2008) (motion to sever to main charges); *State v. Monroe*, 2008 WL 4838649 (Del. Super. Ct. Oct. 31, 20080 (motion *in limine* to exclude Ferrell's statements). The fact that Monroe may not have included his objection to the admission of the jacket in his pre-trial motions to exclude does not obviate the fact that he had a method by which to do so. Accordingly, the court will deny Monroe's complaint about the jacket as barred by *Stone*.

Second, Monroe's contention that the admission of the jacket violated Delaware evidence rules asserts a state law claim that is not cognizable on habeas review. Thus, for both of these reasons, the court will deny claim eight in its entirety for failing to present a proper basis for federal habeas review.

## IV.   CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district

19

court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

The court has concluded that Monroe's petition fails to warrant federal habeas relief, and is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the court will not issue a certificate of appealability.

## V.   CONCLUSION

For the reasons stated, Monroe's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability. An appropriate order shall issue.